**DUPONT MERCK PHARMACEUTICAL COMPANY, Endo Laboratories, and Mylan Pharmaceuticals, Inc., Plaintiffs,**

v.

**BRISTOL–MYERS SQUIBB COMPANY, Defendant.**

**Civ.A. No. 95–290–JJF.**

United States District Court, D. Delaware.

June 27, 1995.

---

Jack B. Blumenfeld, and Andrea L. Roca-nelli, Morris Nichols Arsht & Tunnell, Wilmington, DE, E. Anthony Figg, Steven Lieberman, and Richard E. Campbell, Rothwell Figg Ernst & Kurz, Washington, DC, Blair Q. Ferguson, and Don M. Kerr, The DuPont Merck Pharmaceutical Co., Wilmington, DE, Osagie Imasogie, Endo Laboratories, L.L.C., Wilmington, DE, Roger Foster, and Leah Summers, Mylan Pharmaceuticals, Inc., Morgantown, WV, for plaintiffs.

John A. Parkins, Jr., Richards Layton & Finger, Wilmington, DE, Robert J. Brookhiser, Howrey & Simon, Washington, DC, Robert L. Baechtold, Fitzpatrick Cella Harper & Scinto, New York City, John D. Kiser, Fox Bennett & Turner, Washington, DC, Joel M. Lasker, and Donald J. Barrack, Bristol–Myers Squibb Co., Princeton, NJ, for defendant.

*MEMORANDUM OPINION*

FARNAN, District Judge.

Plaintiffs in this action are The DuPont Merck Pharmaceutical Company, Endo Laboratories, L.L.C., a fully owned subsidiary of The DuPont Merck Pharmaceutical Company, and Mylan Pharmaceuticals, Inc., a competitor of DuPont Merck and Endo. For ease of reference, Plaintiffs will be referred to as "DuPont/Mylan." The Defendant is Bristol–Myers Squibb Company ("BMS"). DuPont Merck and Endo are organized under the laws of the State of Delaware with their principal places of business in Wilmington, Delaware. Mylan is organized under the laws of West Virginia with its principal place of business in Morgantown, West Virginia. BMS is organized under the laws of the State of Delaware and has its principal place of business in New York, New York. This lawsuit was filed on May 10, 1995, and is subject to a Scheduling Order (D.I. 17) entered by The Honorable Sue L. Robinson on May 19, 1995. The May 19 Order provided for expedited discovery and set an evidentiary hearing date on DuPont/Mylan's claims for July 5–7, 1995. Presently before the Court is a Motion to Dismiss (D.I. 27) filed by BMS which has been fully briefed and is ready for decision.

## I. BACKGROUND

This lawsuit centers around United States Patent No. 4,105,776 ("the '776 patent") which is held by BMS and under which BMS manufactures and sells the drug captopril. Captopril is the first of a new class of drugs known as ACE inhibitors (angiotensin converting enzyme) and is utilized in the treatment of hypertension. The '776 patent was issued on August 8, 1978, and was to expire on August 8, 1995. However, as a result of the enactment of the Uruguay Round Agreements Act ("URAA"), 19 U.S.C. § 3501 (1994),[1] in December 1994, the August 8, 1995 expiration date has been extended to February 13, 1996. (Plaintiffs' Answering Brief, p. 2)

---

1. URAA is the legislation that implements the General Agreement on Tariffs and Trade (1994), commonly referred to as GATT.

In addition to extending the expiration date of certain patents, the URAA also contains "transition provisions" that permit a patented invention to be practiced during the time period between the original expiration date and the URAA extended expiration date. A person who elects to practice an invention during this period is required to have "commenced acts" that will become infringing or to have made "substantial investments" to practice the patented invention during the extended expiration time period, and to pay to the patent holder what the URAA describes as "equitable remuneration." Additionally, the URAA prohibits the patent holder from seeking relief from the infringing acts pursuant to remedies embodied in the existing patent laws. The scheme establishing these provisions in the URAA provides in pertinent part:

  (c) CONTINUATION.—

    (1) DETERMINATION.—The term of a patent that is in force on or that results from an application filed before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act shall be the greater of the 20–year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers.

    (2) REMEDIES.—The remedies of sections 283, 284 and 285 of this title shall not apply to Acts which—

      (A) were commenced or for which substantial investment was made before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act; and

      (B) became infringing by reason of paragraph (1).

    (3) REMUNERATION.—The acts referred to in paragraph (2) may be continued only upon the payment of an equitable remuneration to the patentee that is determined in an action brought under chapter 28 and chapter 29 (other than those provisions excluded by paragraph (2) of this title).

35 U.S.C. § 154(c) as amended December 8, 1994, Pub.Law No. 103–465, § 532(a).

Prior to the enactment of the URAA, DuPont/Mylan had intended to commence manufacture and sale of a generic version of captopril shortly after August 8, 1995, the original expiration date of the '776 patent.

In furtherance of their intent to market a generic version of captopril, DuPont/Mylan each submitted to the United States Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA") pursuant to §§ 505(a) and (j) of the federal Food, Drug and Cosmetic Act. *See* 21 U.S.C. § 355(a)(j). This statute requires that an ANDA contain a certification for each patent that covers the generic drug which states one of the following:

    (I) that such patent information has not been filed,

    (II) that such patent has expired,

    (III) of the date on which such patent will expire, or

    (IV) that such patent is invalid or will not be infringed by the manufacture, use or sale of the new drug for which the application is submitted....

21 U.S.C. § 355(j)(2)(A)(vii)(I–IV).

The FDA granted tentative approval to the Mylan ANDA on March 22, 1995. DuPont Merck and Endo filed their ANDA for generic captopril on October 29, 1993, and expect to obtain tentative approval from the FDA in the near future. (Plaintiffs' Answering Brief, pp. 5–6) The ANDAs filed by DuPont/Mylan contain paragraph III certifications which identify the '776 patent and the original expiration date of August 8, 1995. (Plaintiffs' Answering Brief, p. 6)

Absent the enactment of the URAA legislation in December of 1994, the '776 patent would have expired on August 8, 1995, and DuPont/Mylan would have most likely commenced sale of their generic captopril product on August 9, 1995. Instead, DuPont/Mylan found themselves in a situation where the '776 patent had its expiration date extended to February 13, 1996, however, DuPont/Mylan were subject to the prospect of relief from the extended expiration date based on the transition provisions of the URAA. DuPont/Mylan also recognized that a potentially fatal conflict existed between

the URAA transition provisions and other relevant federal statutes. DuPont/Mylan's situation was similar to that of other pharmaceutical companies who also faced URAA expiration date extensions on patents covering drugs that were soon to be subject to generic competition.

In response to this dilemma, one pharmaceutical company, Glaxo, Inc., submitted a Citizens' Petition to the FDA dated March 7, 1995, requesting the FDA issue policy decisions concerning the effect of URAA extended patent terms on the ANDA process. Of particular importance to this litigation is the conclusion reached by the FDA in its May 25, 1995 Response to the Citizens' Petition of Glaxo. (Defendant's Opening Brief, Ex. A)[2]

In its Response, the FDA states:

ANDA's and 505(b)(2) applications pending before the agency on June 8, 1995, must be amended to respond to the URAA–extended patent expiration dates, if information on the new expiration dates is submitted to the agency in a timely manner. ANDA's and 505(b)(2) applications submitted after June 8, 1995, similarly must provide patent certifications with respect to the URAA–extended patent expiration dates. After June 8, 1995, FDA will not approve any application that does not contain a correct certification with respect to a URAA–extended patent expiration date that was submitted in a timely manner to the agency. Finally, FDA cannot require that an applicant submit a paragraph IV certification as to a certain patent. The agency expects that an ANDA or 505(b)(2) applicant that wishes to market a generic version of a drug prior to the expiration of a URAA–extended patent, for which information was timely submitted to FDA, will file a paragraph IV certification with respect to that patent.

Defendant's Opening Brief, Exhibit A (May 25, 1995 FDA Response Letter, pp. 15–16).

In view of the FDA's decision, DuPont/Mylan are required to amend their ANDAs to reflect a paragraph IV certification before the FDA will approve them to market their generic captopril prior to February 13, 1996. (Complaint, ¶¶ 40, 43)

It is the requirement that DuPont/Mylan amend their ANDAs to reflect the URAA extended expiration date of the '776 patent that is the foundation of this declaratory judgment action. The parties seek the Court's interpretation of the various applicable federal statutes and a declaration concerning the rights and duties of the parties under those statutes.

## II. *ISSUES*

### A. The Claims of DuPont/Mylan

In their Complaint, DuPont/Mylan seek preliminary and permanent injunctive relief in the context of their claims for a declaratory judgment. Specifically, DuPont/Mylan ask this Court for:

(i) a declaration that Plaintiffs have made "substantial investments" and/or have commenced "Acts" prior to June 8, 1995 in preparing to compete with Bristol after the original expiration date of the '776 patent;

(ii) a determination of the amount of or method of calculating the equitable remuneration to be paid to Bristol by Plaintiffs during the period between the original and

**2.** BMS supplied the following information at page 4 of its Opening Brief in footnote number 3:

The Glaxo Citizen Petition followed a notice and comment hearing by the Patent and Trademark Office ("PTO") in which the FDA participated. On January 17, 1995, the PTO issued a notice of Hearing and Request for Comments on Changes To a Twenty–Year Patent Term and Its Effects on Patent Expiration Dates and Patent Term Extension which was published in the Federal Register (60 Fed.Reg. 3,398 (Jan. 17, 1995)).

The hearing was held on February 16, 1995 before a panel consisting of the Commissioner of Patents and Trademarks, his staff and a representative from the Food and Drug Administration. The panel heard statements from a number of individuals including representatives of Bristol–Myers Squibb Company, the Generic Pharmaceutical Industry Association, and Mylan Pharmaceuticals, Inc. Robert Foster testified on behalf of Mylan. *See* Declaration of John M. Engel, May 19, 1995, submitted in Opposition to Plaintiffs' Motion for Expedited Discovery and Early Trial Date, at ¶¶ 8, 10.

extended expiration dates of the '776 patent;

(iii) a declaration that, so long as Plaintiffs pay Bristol such equitable remuneration, they will have authority to make, use or sell captopril products, and therefore, will not infringe '776 patent; and

(iv) an injunction that compels Bristol to waive the Waxman–Hatch Act forty-five (45) day notice period for filing a patent infringement lawsuit and that precludes Bristol from filing any patent infringement lawsuit under 35 U.S.C. § 271(e)(2) for the purpose of delaying FDA approval of the Plaintiffs' generic captopril product and interfering with this Court's jurisdiction.

(Plaintiffs' Answering Brief, p. 6)

Plaintiffs also advised the Court that, upon obtaining the relief described above, they may amend their ANDAs changing the paragraph III certifications to paragraph IV certifications to assert that they will not infringe the '776 patent by making, using, or selling their generic captopril products after August 8, 1995. (Plaintiffs' Answering Brief, pp. 6–7) [3]

## B. Grounds Argued by BMS in Support of its Motion to Dismiss

BMS has set forth three grounds in support of its Motion to Dismiss DuPont/Mylan's Complaint. Those three grounds are:

1. BMS contends that the Complaint fails to state a claim upon which relief can be granted. BMS argues that each count of the Complaint is based upon DuPont/Mylan's contention that they have a right under the transitional provisions of the URAA to market a generic captopril commencing on August 9, 1995. If they can establish that they have made a "substantial investment" in anticipation of doing so or have commenced acts in furtherance of their plan and agree to

pay "equitable remuneration" to BMS. BMS argues that in order for DuPont/Mylan to have a cognizable claim under this theory they must allege and demonstrate that the provisions of 35 U.S.C. § 271(e)(4)(A) are not available to a patent holder when the transitional provisions of the URAA are implicated by the manufacturer and marketer of a generic drug. BMS asserts that the remedies prescribed by § 271(e)(4) are available and, therefore, DuPont/Mylan cannot obtain the relief requested under any interpretation of the URAA transitional provisions.

2. BMS contends that the Court lacks subject matter jurisdiction over the claims of DuPont/Mylan's Complaint. In support of this ground, BMS argues that the Hatch–Waxman Amendments to the Food, Drug & Cosmetic Act, 21 U.S.C. § 355(j)(4)(B)(iii)(III), provides that a person filing a paragraph IV certification, as DuPont/Mylan is admittedly required to do here, may not bring a declaratory judgment action with respect to the patent until the expiration of 45 days from the date said party asserting a paragraph IV certification provides notice to the patent holder. In light of this requirement, BMS argues that since the 45 day period has not even begun to run because notice has not been provided to it by DuPont/Mylan, DuPont/Mylan may not maintain the instant declaratory action.

3. BMS contends that the Complaint fails to state a claim for declaratory relief because no actual controversy presently exists between the parties. BMS contends that all of the claims asserted by DuPont/Mylan are subject to future events, most notably, the requirement that DuPont/Mylan file a paragraph IV certification with the FDA. (Defendant's Opening Brief, pp. 2–3)

## III. DISCUSSION

The Court will address the three grounds asserted by BMS in a sequence that provides

---

**3.** In their Answering Brief, DuPont/Mylan have indicated reasons why it is important that they obtain the declaratory and injunctive relief requested in their Complaint. Essentially, DuPont/Mylan point out that they intend to ask the FDA to approve their ANDA as effective upon the original August 8, 1995 expiration date of the '776 patent. However, DuPont/Mylan advised that upon amending their ANDAs to contain a paragraph IV certification, they will be

required to notify BMS and provide a detailed explanation of the basis for the paragraph IV certification. DuPont/Mylan represents that once notice of the amended certification is provided to BMS, BMS has made it clear that it will sue them for patent infringement under 35 U.S.C. § 271(e)(2), thus, permitting BMS to obtain an automatic injunction that will prevent the FDA from approving the DuPont/Mylan amended ANDAs.

a logical procedural framework for the disposition of the present application, as well as the future litigation that is sure to occur. With this principle in mind, the Court will consider the arguments of BMS in the following order: (1) whether DuPont/Mylan have demonstrated that an actual controversy exists in regard to their claims for a declaratory judgment; (2) whether the Court has subject matter jurisdiction over the Plaintiffs' claims; and (3) whether DuPont/Mylan have stated claims upon which relief can be granted.

## A. Actual Controversy

The Court is persuaded that a case or actual controversy does not exist between the parties to this litigation until DuPont/Mylan amend their ANDAs to contain a paragraph IV certification in accordance with FDA policy. It is the Court's view that the filing of the paragraph IV certification by DuPont/Mylan will trigger the statutory scheme addressed by the FDA in its May 25 Response. At that point, a court would have before it a solid dispute requiring the interpretation of federal statutes and the establishment of the rights and obligations of the parties pursuant to those statutes. The "case" that has been presented to the Court at this juncture has all the makings of a good debate but falls short of meeting the requirements of an actual legal controversy. By their own admission, what DuPont/Mylan have placed before the Court are interesting questions of statutory interpretation upon which the Court could offer opinions. However, the Court has not been presented with legal issues grounded in established facts that require a judicial decision in order to settle a dispute. For example, DuPont/Mylan has, in essence, advised the Court that they are interested in its opinion with regard to what an equitable remuneration might be under the URAA transition provisions, and that the Court's opinion would affect a future decision by them of whether or not to undertake the filing of a paragraph IV certification. A decision as to equitable remuneration would not resolve the present dispute, but rather would be used by DuPont/Mylan to assist them in making a future decision. BMS has also cited other examples where

DuPont/Mylan have demonstrated that the relief they request by this litigation is in the nature of an advisory opinion which will be subject to further scrutiny by Plaintiffs before they make a decision to act. *See* Defendant's Opening Brief, pp. 32–34. The most relevant statement cited by BMS is found in Plaintiffs' Reply Brief in Support of their Motion for Expedited Discovery and Early Trial, in which they assert:

> [u]ntil Plaintiffs know at least an upper limit on the amount of remuneration that they will have to pay, they cannot provide assurance that they will pay it.

Plaintiff's Reply Brief in Support of their Motion for Expedited Discovery and Early Trial, p. 7.

In effect, Plaintiffs are telling the Court that if it (1) enters an injunction that compels BMS to waive the Waxman–Hatch Act 45 day notice period for filing a patent infringement lawsuit; (2) enjoins BMS from filing any patent infringement lawsuit under 35 U.S.C. § 271(e)(2); and (3) enters a declaration that if DuPont/Mylan pay BMS the equitable remuneration set by the Court, they will have the authority to make, use or sell captopril products and not infringe the '776 patent; DuPont/Mylan will then make a decision whether or not to file a paragraph IV certification with the FDA. This decision by DuPont/Mylan will depend on whether or not they are satisfied with the amount of remuneration or the formula for remuneration set by the Court. Of course, DuPont/Mylan would also be able to decide that despite the various orders that may be entered by the Court, the remuneration established by the Court was too high and, as a result, they would not act.

It is the hypothetical or "what if" nature of Plaintiffs' position that convinces the Court that an actual controversy for purposes of the Declaratory Judgment Act will only occur upon the filing of the appropriate paragraph IV certification by DuPont/Mylan with the FDA. Likewise, the Court believes that its decision better serves the complex FDA approval process, while at the same time permitting DuPont/Mylan to obtain, if they choose to, an interpretation of the applicable

federal statutes and a full adjudication of their rights and duties pursuant to those interpretations.[4]

## B. Subject Matter Jurisdiction and Failure to State a Claim

Because the Court has determined that no controversy exists for purposes of the Declaratory Judgment Act relative to the claims of Plaintiffs' Complaint, the Court will not address the remaining grounds BMS has cited in support of its Motion to Dismiss. These matters can be addressed, if appropriate, either upon the filing of a future declaratory judgment action by Plaintiffs, or in the context of a Motion to Dismiss filed in response to any litigation brought by BMS.

## IV. CONCLUSION

For the reasons discussed, the Court will grant, without prejudice, the Motion to Dismiss filed by BMS on the grounds that Plaintiffs' Complaint filed pursuant to the Declaratory Judgment Act does not present an actual controversy which is capable of adjudication by the Court at this time.

An appropriate Order will be entered.

---

**4.** The Court notes that it has considered the four part analysis presented in *Bituminous Coal Operators' Ass'n. v. International Union*, 585 F.2d 586, 596–97 (3d Cir.1978), and urged by Du-Pont/Mylan. In this regard, the Court would add to the reasons articulated in this Memorandum Opinion that it finds that the convenience of the parties and the public interest affected by this litigation are best accommodated by requiring the parties to adhere to the regulatory process established by the FDA in a well-reasoned decision concerning the same issues raised by the Plaintiffs in this litigation. Neither party will suffer any prejudice by such adherence (i.e. the requirement that Plaintiffs file a paragraph IV certification) and that upon compliance with the FDA procedure, Plaintiffs will have available to them a convenient judicial forum for resolution of their present dispute.