**The DuPONT MERCK PHARMACEUTICAL COMPANY, Endo Laboratories, L.L.C., and Mylan Pharmaceuticals Inc., Plaintiffs–Appellants,**

v.

**BRISTOL–MYERS SQUIBB COMPANY, Defendant–Appellee.**

No. 95–1410.

United States Court of Appeals, Federal Circuit.

Aug. 8, 1995.

Rehearing Denied Aug. 28, 1995.

E. Anthony Figg, Rothwell, Figg, Ernst & Kurz, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Steven Lieberman and Richard E. Campbell. Also on the brief was Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Blair Q. Ferguson, the DuPont Merck Pharmaceutical Co., Wilmington, DE, Osagie O. Imasogie, Endo Laboratories, L.L.C., Wilmington, DE, and Roger L. Foster, Mylan Pharmaceuticals Inc., Morgantown, WV.

Robert J. Brookhiser, Howrey & Simon, Washington, DC, argued for defendant-appellee. With him on the brief were Robert L. Baechtold, Fitzpatrick, Cella, Harper & Scinto, New York City, and Donald J. Barrack, Bristol–Myers Squibb Co., Princeton, NJ, of counsel.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

PER CURIAM.

The DuPont Merck Pharmaceutical Company, its wholly owned subsidiary Endo Laboratories, L.L.C., and Mylan Pharmaceuticals Inc. appeal the United States District Court for the District of Delaware's dismissal of their complaint. *DuPont Merck Pharmaceutical Co. v. Bristol–Myers Squibb Co.*, 894 F.Supp. 804 (D.Del.1995). Because section 532(a) of the Uruguay Round Agreements Act, Pub.L. No. 103–465, 108 Stat. 4809, 4983–85 (1994) (URAA) (as amended at 35 U.S.C.A. § 154 (West Supp.1995)), does not grant DuPont Merck/Endo and Mylan their requested relief, this court affirms.

## BACKGROUND

Bristol–Myers Squibb Company owns U.S. Patent No. 4,105,776 (the '776 patent), which discloses and claims the heart drug captopril. Bristol–Myers markets captopril under the

trademark "Capoten" for the treatment of hypertension, heart failure, and other heart ailments. The '776 patent issued on August 8, 1978, and was due to expire on August 8, 1995. *See* 35 U.S.C. § 154 (1988) (patent term is seventeen years from grant). The URAA, however, extended the patent's expiration date to February 13, 1996, twenty years from the filing date of the '776 patent. *See* 35 U.S.C.A. § 154(c)(1) (for patents in force on June 8, 1995, patent term is the greater of seventeen years from grant or twenty years from filing).

Besides extending the patent term, the URAA contained provisions that limited the statutory remedies available for infringement during the period between the original expiration date and the URAA-extended expiration date (the Delta period). These provisions state:

(c) CONTINUATION.—

(1) DETERMINATION.—The term of a patent that is in force on ... the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act [June 8, 1995] shall be the greater of the 20–year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers.

(2) REMEDIES.—The remedies of sections 283, 284, and 285 of the title shall not apply to Acts which—

(A) were commenced or for which substantial investment was made before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act; and

(B) became infringing by reason of paragraph (1).

(3) REMUNERATION.—The acts referred to in paragraph (2) may be continued only upon the payment of an equitable remuneration to the patentee that is determined in an action brought under chapter 28 and chapter 29 (other than those provisions excluded by paragraph (2)) of this title.

35 U.S.C.A. § 154(c). The URAA thus creates a limited safe harbor for persons who have commenced acts, or made substantial investment toward commission of acts, before June 8, 1995, which become infringing because of the extension of the patent period. Patentees may not assert their traditional patent remedies of 35 U.S.C. §§ 283, 284, and 285 for infringing acts committed by these qualifying persons during the Delta period. *See* 35 U.S.C.A. § 154(c)(2). In exchange, the qualifying persons must pay an equitable remuneration to the patentee. *See* 35 U.S.C.A. § 154(c)(3).

DuPont Merck/Endo and Mylan want to market generic captopril products during the period August 8, 1995 to February 13, 1996 (the Delta period for the '776 patent). They assert that the URAA entitles them to market captopril during the Delta period because they qualify for the safe harbor of section 154(c). Critical to DuPont Merck/Endo and Mylan's asserted right to market generic drug products under section 154(c) is the effect of the URAA on the statutes governing the Food and Drug Administration's (FDA's) approval of generic drug products.

Under the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585 (the Hatch–Waxman Act), a pharmaceutical manufacturer seeking expedited approval to market a generic version of a patented drug may submit to FDA an abbreviated new drug application (ANDA). 21 U.S.C. § 355(j) (1988 & Supp. V 1993). As part of the ANDA process, when the patent has not expired, the generic drug manufacturer must certify either the "date on which [the] patent will expire" (a paragraph III certification) or that the patent is "invalid or will not be infringed by the manufacture, use, or sale of the [generic] drug for which the [ANDA] is submitted" (a paragraph IV certification). 21 U.S.C. § 355(j)(2)(A)(vii)(III), (IV).

If an ANDA contains a paragraph IV certification, the ANDA applicant must give notice to the patentee and must provide detailed bases for its belief that the patent is invalid or not infringed. 21 U.S.C. § 355(j)(2)(B)(i). The patentee then has forty-five days to sue the ANDA applicant for infringement. 21 U.S.C. § 355(j)(4)(B)(iii). If the patentee files suit within that period, then FDA approval does not occur until expi-

ration of the patent, judicial resolution of the infringement suit, or thirty months from the patentee's receipt of notice, whichever is earliest. *Id.*

Before enactment of the URAA, DuPont Merck/Endo and Mylan each submitted an ANDA to FDA for their generic captopril products. These ANDAs contained paragraph III certifications and identified August 8, 1995 as the expiration date for the '776 patent. FDA granted tentative approval of the Mylan ANDA in March 1995. DuPont Merck/Endo filed its ANDA in October 1993 and awaits FDA's tentative approval.

Enactment of the URAA extended the term of the '776 patent by six months. *See* 35 U.S.C.A. § 154(c)(1). In a May 1995 letter, FDA stated its position on the effect of URAA's extended patent terms on the statutes and FDA regulations governing the ANDA process. *See* 21 U.S.C. § 355(j); 21 C.F.R. § 314.107 (1995). FDA required ANDA applicants who wished to market generic versions of drugs covered by a patent with a URAA-extended term to file paragraph IV certifications. DuPont Merck/Endo and Mylan thus must amend their ANDAs to include paragraph IV certifications before FDA will approve them.

FDA concluded that the URAA provisions do not affect the right of a patentee to file an infringement suit under 35 U.S.C.A. § 271(e) (West Supp.1995). Section 271(e), enacted as part of the Hatch–Waxman Act, enables generic drug manufacturers to market their generic products as soon as possible after expiration of the relevant drug patents. Under section 271(e)(1), it is not infringement to conduct otherwise infringing acts necessary to prepare an ANDA. 35 U.S.C.A. § 271(e)(1) ("It shall not be an act of infringement to make, use, offer to sell, or sell ... a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs...."). Under section 271(e)(2), however, a generic drug manufacturer infringes when it files an ANDA to obtain FDA approval to market a generic drug product *before the expiration* of the drug patent. 35 U.S.C.A. § 271(e)(2) ("It shall be an act of

infringement to submit ... [an ANDA] ... if the purpose of such submission is to obtain [FDA] approval ... to engage in the commercial manufacture, use, or sale of a drug ... claimed in a patent ... before the expiration of such patent."). When a patentee brings a section 271(e)(2) infringement suit, FDA suspends processing of the ANDA. *See* 21 U.S.C. § 355(j)(4)(B). Therefore, according to FDA, section 271(e)(2) prevents an ANDA applicant from obtaining FDA approval of a generic drug product before the patent's URAA-extended expiration date.

Rather than amend their ANDAs to include paragraph IV certifications as directed by FDA, DuPont Merck/Endo and Mylan filed this declaratory judgment action. DuPont Merck/Endo and Mylan asked the district court to resolve perceived legal conflicts between the URAA provisions, *see* 35 U.S.C.A. § 154(c), and the statutory scheme governing FDA approval of ANDAs, *see* 21 U.S.C. § 355(j), 35 U.S.C.A. § 271(e). Specifically, they sought:

1. a declaration that they have made "substantial investments" and/or have commenced "Acts" prior to June 8, 1995 in preparing to compete with Bristol–Myers's '776 patent after its original expiration date, as required for application of the URAA provisions, *see* 35 U.S.C.A. § 154(c)(2);

2. a determination of the amount of, or method of, calculating the equitable remuneration to be paid to Bristol–Myers, *see* 35 U.S.C.A. § 154(c)(3);

3. a declaration that, as long as they pay Bristol–Myers such equitable remuneration, they will have authority to make, use, and sell their captopril products after August 8, 1995, and therefore, will not infringe the '776 patent;

4. an injunction that compels Bristol–Myers to waive the forty-five date notice period for filing an infringement suit under 21 U.S.C. § 355(j); and

5. injunctive relief to preclude Bristol–Myers from filing a section 271(e)(2) infringement suit.

DuPont Merck/Endo and Mylan fear that Bristol–Myers will use the procedures avail-

able under 21 U.S.C. § 355(j) to prevent FDA from processing their ANDAs. If Du-Pont Merck/Endo and Mylan amend their ANDAs to include a paragraph IV certification, they must notify Bristol–Myers of the amendment. 21 U.S.C. § 355(j)(2)(B)(iii). Bristol–Myers may then sue for patent infringement, causing FDA to postpone approval of their ANDAs until a district court decides that the '776 patent is not infringed or thirty months pass. 21 U.S.C. § 355(j)(4)(B)(iii). Because Bristol–Myers could extend the infringement suit through February 13, 1996, contend DuPont Merck/Endo and Mylan, this would prevent them from marketing their generic captopril products during the Delta period.

Bristol–Myers moved to dismiss DuPont Merck/Endo and Mylan's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(1), (b)(6). The district court granted Bristol–Myers's motion to dismiss on the ground that no actual controversy existed as required by the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988). The district court found that an actual controversy would only occur upon DuPont Merck/Endo and Mylan's filing of paragraph IV certifications. DuPont Merck/Endo and Mylan appealed. On July 14, 1995, this court granted expedited briefing and hearing of this appeal. This court held a hearing on July 31, 1995.

## DISCUSSION

■ This case comes to this court as an expedited appeal from a denial of jurisdiction over a declaratory judgment action. The existence of an actual controversy is a question of law over which this court exercises plenary review. *BP Chems., Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 28 USPQ2d 1124 (Fed.Cir.1993). This case presents an actual controversy for purposes of the Declaratory Judgment Act.

■ A court has jurisdiction to render a declaratory judgment only in the event of an actual controversy. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d

953, 3 USPQ2d 1310 (Fed.Cir.1987). This court has a two-pronged test for evaluating the actual controversy requirement for declaratory judgment claims of patent noninfringement: (1) did the acts of the defendant indicate an intent to enforce its patent, and (2) did the plaintiff engage "in an actual making, selling, or using activity subject to an infringement charge or make meaningful preparation for such activity." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736, 6 USPQ2d 1685, 1689 (Fed. Cir.1988); *see also B.P. Chems.,* 4 F.3d at 978 (recasting second prong as "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity"). DuPont Merck/Endo and Mylan meet this test. First, Bristol–Myers has threatened to bring patent infringement suits against generic drug manufacturers who attempt to market their products during the Delta period. Bristol–Myers' stated policy, together with letters sent by Bristol–Myers to DuPont Merck/Endo and Mylan relating to the '776 patent, create a reasonable apprehension on the part of DuPont Merck/Endo and Mylan that they will face infringement suits if they amend their ANDAs to include paragraph IV certifications. Second, DuPont Merck/Endo and Mylan have spent much money in preparation for the potentially infringing activity of submitting ANDAs. *See* 35 U.S.C.A. § 271(e)(2) (infringement to submit an ANDA if purpose is to make, use, or sell generic drug before expiration of patent). Thus, the district court had jurisdiction over DuPont Merck/Endo and Mylan's declaratory judgment action.

DuPont Merck/Endo and Mylan asked the district court to decipher the legal relation between section 154(c) of the URAA and the statutory scheme governing FDA approval of ANDAs, *see* 21 U.S.C. § 355(j), 35 U.S.C.A. § 271(e). Because this issue is purely legal and was fully briefed to the district court, in the interests of economy, this court will decide on the merits whether the law entitles DuPont Merck/Endo and Mylan to relief. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976); *UMC Elecs. Co. v. United States,* 816 F.2d

647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir. 1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988).

■ DuPont Merck/Endo and Mylan want to market their generic drugs during the Delta period. Section 355(j) requires them to file paragraph IV certifications to obtain FDA approval. 21 U.S.C. § 355(j)–(2)(vii). Filing such certifications, however, is infringement. A generic drug manufacturer infringes when it files an ANDA to obtain FDA approval to market a generic drug "before the expiration" of the drug patent. 35 U.S.C.A. § 271(e)(2). DuPont Merck/Endo and Mylan have submitted ANDAs for precisely this reason. DuPont Merck/Endo and Mylan want to market their generic captopril products before February 13, 1996—the date of expiration of Bristol's '776 patent. Thus, should DuPont Merck/Endo and Mylan file amended ANDAs, they will commit infringement under section 271(e)(2).

■ The only remaining question is whether the URAA converts this otherwise infringing activity during the Delta period to noninfringing activity. Section 154(c) of the URAA exempts qualifying persons who infringe during the Delta period from certain remedies for infringement. 35 U.S.C.A. § 154(c)(2), (3). Section 154, however, does not authorize infringement. Infringement under section 271(e)(2) before passage of the URAA continues to be infringement after passage of the URAA.

The URAA has no effect, moreover, on the provisions in section 355(j)(4)(B)(iii) triggered by the filing of an infringement suit. Once a patentee files an infringement suit under section 271(e)(2), FDA will suspend its approval of the ANDA. *See* 21 U.S.C. § 355(j)(4)(B)(iii). The patentee may then litigate its infringement suit as aggressively as permitted by law.

In sum, the URAA, by its terms, exempts a qualified infringer from the remedies of sections 283, 284, and 285 of Title 35. The URAA, however, works no change on the definition of infringement under section 271(e)(2) and has no affect on the statutory provisions relating to FDA approval of ANDAs that are triggered by that act of infringement. *See* 21 U.S.C. § 355(j). Contrary to DuPont Merck/Endo and Mylan's contentions, section 154(c) of the URAA does not clash with the Hatch–Waxman Act. Therefore, DuPont Merck/Endo and Mylan have not stated a claim upon which relief may be granted.

## CONCLUSION

Because DuPont Merck/Endo and Mylan are not entitled to relief as a matter of law, this court affirms the district court's dismissal of their complaint.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*