80 F.3d 1543
 64 USLW 2668, 38 U.S.P.Q.2d 1347
 MERCK & CO., INC., and MSD Technology, L.P., Plaintiffs-Appellees,
and
Schering Corporation, Plaintiff-Appellee,
and
Bracco Diagnostics Inc. and Bracco International B.V.,
Plaintiffs-Appellees,
and
Hoffmann-La Roche Inc. and Syntex (U.S.A.) Inc., Plaintiffs-Appellees,
and
Organon, Inc., Plaintiff-Appellee,
v.
David A. KESSLER, M.D., Commissioner of Food and Drugs, and
Bruce A. Lehman, Assistant Secretary of Commerce
and Commissioner of Patents and
Trademarks, Defendants-Appellants,
and
Generic Pharmaceutical Industry Association, Defendant-Appellant.
 Nos. 96-1068, 96-1105 and 96-1107.
 United States Court of Appeals,
Federal Circuit.
 April 4, 1996.
Rehearings Denied; Suggestions for Rehearing In Banc
Declined July 12, 1996.*
 
 Appealed from: United States District Court for the Eastern District of Virginia (Alexandria); Albert V. Bryan, Jr., Judge.
 
 
 1
 Harris Weinstein, Covington & Burling, Washington, DC, argued for plaintiffs-appellees, Merck & Co., Inc. and MSD Technology, L.P. and plaintiff-appellee, Schering Corporation. With him on the brief were Paul J. Berman and Bruce N. Kuhlik. Also on the brief were John F. Lynch and Nicolas G. Barzoukas, Arnold, White & Durkee, Houston, Texas. Of counsel were Kevin J. McGough, Michael C. Sudol, Jr., Paul D. Matukaitis and Thomas W. Krause.
 
 
 2
 Donald O. Beers, Arnold & Porter, Washington, DC, argued for plaintiffs-appellees, Hoffmann-La Roche Inc. and Syntex (U.S.A.) Inc. With him on the brief was David E. Korn.
 
 
 3
 Christopher L. Cannon, Vice President, General Counsel, Bracco Diagnostics Inc., Plainsboro, New Jersey, was on the brief for plaintiffs-appellees, Bracco Diagnostics Inc. and Bracco International B.V. Also on the brief were Roger A. Clark, Edward J. Fitzpatrick and George P. Hoare, Jr., Roger & Wells, Washington, DC.
 
 
 4
 Wayne H. Matelski, Barbara S. Wahl and Eric B. Bruce, Arent Fox Kintner Plotkin & Kahn, Washington, DC, were on the brief for plaintiff-appellee, Organon Inc.
 
 
 5
 John C. Hoyle, Attorney, Department of Justice, Washington, DC, argued for defendants-appellants. With him on the brief were Frank W. Hunger, Assistant Attorney General, Helen F. Fahey, United States Attorney and Douglas N. Letter, Attorney. Also on the brief were Nancy J. Linck, Solicitor, Al Drost, Deputy Solicitor and Scott A. Chambers, Associate Solicitor, Department of Commerce, Patent and Trademark Office, Arlington, Virginia, of counsel.
 
 
 6
 Alfred B. Engelberg, Greenwich, Connecticut, argued for defendant-appellant. With him on the brief were James F. Flug and Reuben B. Robertson, III, Ingersoll & Bloch, Chartered, Washington, DC.
 
 
 7
 Donald R. Stone, Gary L. Yingling and Hilda Kay Cross, McKenna & Cuneo, L.L.P., Washington, DC, were on the brief for Amici Curiae, National Pharmaceutical Alliance, Gray Panthers, and United Seniors Health Cooperative.
 
 
 8
 Cornish F. Hitchcock and Brian Wolfman, Public Citizen Litigation Group, Washington, DC, were on the brief for Amici Curiae, Public Citizen, National Council of Senior Citizens and National Consumers League.
 
 
 9
 Arthur Y. Tsien and David F. Weeda, Olsson, Frank & Weeda, P.C., Washington, DC, were on the brief for Amicus Curiae, National Association of Pharmaceutical Manufacturers.
 
 
 10
 Peter T. Cobrin, Cobrin, Gittes & Samuel, New York City, was on the brief for Amicus Curiae, Hovione Sociedade Quimica, S.A.
 
 
 11
 Robert A. Armitage and Michael A. Sanzo, Vinson & Elkins, L.L.P., Washington, DC, were on the brief for Amicus Curiae, Pharmaceutical Research and Manufacturers of America.
 
 
 12
 Before ARCHER, Chief Judge, NIES, Senior Circuit Judge, MICHEL, Circuit Judge.
 
 
 13
 NIES, Senior Circuit Judge.
 
 
 14
 These appeals raise the question of whether there are limitations to the application of a patent restoration extension, granted pursuant to the Hatch-Waxman Act (35 U.S.C. § 156), to the term of the patent calculated as 20 years from filing under the Uruguay Round Agreements Act (URAA) (35 U.S.C. § 154). The district court held that all patents in force on June 8, 1995, including patents in force only because of a Hatch-Waxman extension, were entitled to add the time of the Hatch-Waxman extension to the new term afforded by the URAA. We affirm-in-part and reverse-in-part.
 
 I.
 
 15
 Two statutes are at issue in this case. The Drug, Price Competition and Patent Term Restoration Act, codified in part at 35 U.S.C. § 156[1], (also known as the Hatch-Waxman Act), provides generally for a limited extension of the term of a patent, inter alia, for a drug as to which marketing was held up during the patent term by the process of obtaining Food and Drug Administration (FDA) approval (hereinafter "restoration extension"). Each of the drug patents in suit received a two-year RESTORATION extension at a time when the term of the patent was 17 years from date of issuance. The second statute is the URAA, 35 U.S.C. § 154 (1995), which provides an alternative calculation of the term for patents in force on June 8, 1995, namely, 20 years from filing of the patent application. For patents that were prosecuted to issuance in less than three years, URAA effects an extension of its term, that is, the difference between 17 years from issuance and 20 years from filing. Each of the patents in suit was in force on June 8, 1995.
 
 
 16
 The first of these statutes, the Hatch-Waxman Act, which passed in 1984, eliminated the pre-1984 requirement that a company seeking to market a generic version of a patented drug had to conduct its own testing program. Instead, the Hatch-Waxman Act permits the generic producer of the fully tested drug to rely on the safety and efficacy data of a prior applicant, frequently the holder of a patent on the product. 21 U.S.C. § 355(j)(7)(B); H.R.Rep. No. 857, 98th Cong.2d Sess. Pt. 1, at 16-17 (1984). Thus, the marketing of generic versions of an FDA-approved drug is expedited. In exchange, the Hatch-Waxman Act provides the holders of patents on approved patented products with an extended term of protection under the patent to compensate for the delay in obtaining FDA approval. This restoration period does not recover the full time lost from the patent term due to FDA's premarket approval process but merely "ameliorates the loss incurred when patent terms tick away while the patented product is awaiting [FDA's] regulatory approval for marketing." Unimed, Inc. v. Quigg, 888 F.2d 826, 829, 12 USPQ2d 1644, 1647 (Fed.Cir.1989). Regardless of the time so lost, if a patent was issued and testing began before the 1984 enactment of the Hatch-Waxman Act, the total extension period may not exceed two years, 35 U.S.C. § 156(g)(6)(C); otherwise the restoration period is limited to no more than five years. Id. at § 156(g)(6)(B). Further, the effective patent term including the restoration period may not exceed 14 years following FDA approval of the new drug. Id. at § 156(c)(3).
 
 
 17
 Another overall limitation is that the term of the patent may be given only one RESTORATION extension. Id. at § 156(a)(2). If the term of the patent has received such an extension, the patent may not be given another restoration extension even for another drug covered by the patent whose marketing also is delayed by reasons of FDA procedures. Finally, the restoration period of the patent does not extend to all products protected by the patent but only to the product on which the extension was based. Id. at § 156(b)(1). A restoration extension is made known to the public by the issuance of a certificate by the PTO stating the number of days that the term is extended. Id. at § 156(e)(1); 37 C.F.R. § 1.780.
 
 
 18
 The FDA has major administrative responsibilities under the Hatch-Waxman Act. A generic drug manufacturer is not guilty of infringement by filing an application for approval of marketing (an ANDA) if the generic company does not seek approval to engage in the commercial manufacture, use, or sale of the drug before the expiration of the patent. On the other hand, a patent owner is entitled to notice, and it is an act of infringement for purposes of a declaratory judgment action, for a generic manufacturer to file an ANDA for use prior to the patent expiration date on the basis of alleged invalidity or noninfringement of the patent. The statute requires the FDA to publish the expiration date, and a patent owner must be given notice by the applicant of an ANDA seeking use before the expiration of the patent.[2]
 
 
 19
 The second statute, the URAA, was enacted in 1994. The purpose of the URAA was not to extend patent terms, although it has that effect in some cases, but to harmonize the term provision of United States patent law with that of our leading trading partners which grant a patent term of 20 years from the date of filing of the patent application. Prior to June 8, 1995, U.S. patents had an expiration date under 35 U.S.C. § 154 measured as 17 years from the date the patent issued, except where terminal disclaimers were filed. Amended section 154(a) now reads:
 
 
 20
 Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c) of this title, from the date on which the earliest such application was filed.
 
 
 21
 35 U.S.C. § 154(a)(2) (1994).
 
 
 22
 For certain patents which were issued and for pending applications which were filed prior to June 8, 1995, a transitional provision preserves a guaranteed 17-year term, if it is longer than 20 years from filing, by the following provision:
 
 
 23
 The term of a patent that is in force on or that results from an application filed before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act shall be the greater of the 20-year term as provided in subsection (1), or 17 years from grant, subject to any terminal disclaimers.
 
 
 24
 Id. at § 154(c)(1). Patents in the section 154(c)(1) category thus are entitled to keep or to enjoy the 17-year term from issuance of the patent or a 20-year from filing term, whichever is longer.[3]
 
 
 25
 Congress did not expressly address the question whether a restoration extension under section 156 could be added to the term of a patent which could also invoke the section 154 transition provision. Delineating the combined effects of the URAA and the Hatch-Waxman Act for patents issued prior to June 8, 1995, is thus the task before us.[4] It is agreed that a patent issued after June 8, 1995, on a transition application is entitled to any applicable restoration extension to be added to its term which is 17 years from issuance or 20 years from filing whichever is longer.
 
 II.
 
 26
 The plaintiffs in these actions are holders of patents in force on June 8, 1995. When each of the 12 patents in this case was issued, it received a term of 17 years from its grant, pursuant to the then-existing provisions of section 154. Also prior to the URAA's effective date of June 8, 1995, each of these patents received a two-year restoration extension pursuant to the Hatch-Waxman Act. Five of the patents in issue were "in force" ONLY because the patent term had been given a restoration extension.
 
 
 27
 On enactment of 35 U.S.C. § 154, these plaintiffs submitted to the FDA requests for publication of new patent expiration dates. As explained above, the FDA is required to publish patent expiration dates in connection with administering the Hatch-Waxman Act. Each of the plaintiff patent holders submitted new expiration dates for their patents based on a term calculated as 20 years from the filing date of the patent application plus two years. The FDA refused to publish the new expiration dates calculated by these patent holders. The basis for the refusal was the issuance by the Commissioner of Patents and Trademarks (the "PTO") of a "Final Determination" which, in effect, ruled that the holder of a patent which was granted before June 8, 1995, was not entitled to have a restoration extension, previously received or one obtained in the future, added to the end of the 20-year term provided under amended section 154.[5]
 
 
 28
 With respect to patents issued before June 8, 1995, the PTO and FDA took the position that the patentee is entitled to 17 years from issuance plus any restoration extension OR to 20 years from filing (without a restoration add-on), whichever is greater. For each of the patents in suit, the 20-year from filing term is shorter than the existing term under the PTO interpretation so that the patentee has no claim to a 20-year from filing term. The PTO principally relied on the language in section 156(a) that the term of a patent "shall be extended in accordance with this section from the ORIGINAL EXPIRATION DATE of the patent ..." (emphasis added). Inasmuch as any patent issued prior to June 8, 1995, was granted a term of 17 years from issuance, the PTO concludes that that date is its "original expiration date" and the restoration extension can only be added thereto. The PTO also notes that, for at least one patent in issue, adding the restoration extension to the 20-year term violates the 14-year cap of section 156(c)(3), absent recalculation. Nothing added to the patent statute by URAA mandates such a RECALCULATION of a restoration extension.
 
 
 29
 The district court rejected the PTO/FDA interpretation. The district court found that that interpretation would have a disparate impact on those patent applicants whose filing preceded June 8, 1995, and those applicants who filed thereafter. In the court's view, it would be inconsistent with the apparent evenhandedness intended by the URAA to discriminate between these two groups on the basis of filing date of the application. The court rejected the PTO's reliance on the words "original expiration date" in section 156(a), reasoning that the URAA, in effect, changed the "original expiration date" in some cases to mean 20 years from the filing date of the application. As to patents which would have expired prior to June 8, 1995, but for a restoration extension, the court was unpersuaded that permitting a two-year restoration extension to be added anew to a URAA extended term was prohibited under the Hatch-Waxman Act as a "second" extension. The court adhered to this conclusion even where the effective restoration period exceeded the two-year and fourteen-year time limitations for Hatch-Waxman extensions.
 
 III.
 A. Jurisdiction
 
 30
 As an initial matter, this court questioned the propriety of reviewing at this time the PTO's "Final Determination" in a declaratory judgment action. Was the question of its correctness raised in a case or controversy? U.S. Const. art. III, § 2. Upon review of all of the circumstances, we hold that the constitutional limitation on review is satisfied. The dispute arose between appellees and the FDA, which refused to publish new expiration dates pursuant to a claim of entitlement under URAA. In that connection, the PTO's ruling may be reviewed inasmuch as the FDA adopted the PTO's interpretation of the statute as the basis for its action. Further, appellants are damaged by reason of their entitlement to notice from generic manufacturers depending on the patent expiration date which they would not receive without publication of the new date. An actual case or controversy is presented. Cf. DuPont Merck Pharmaceutical Co. v. Bristol-Myers Squibb Co., 62 F.3d 1397, 35 USPQ2d 1718 (Fed.Cir.1995).
 
 B. Standard of Review
 
 31
 Respecting our review of the merits, we are presented with a matter of pure statutory interpretation. Accordingly, this court reviews the district court's decision on the meaning of the various provisions and their interrelationship de novo. Bristol-Myers Squibb Co. v. Royce Labs., Inc., 69 F.3d 1130, 1134, 36 USPQ2d 1641 1645 (Fed.Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996).
 
 
 32
 Commissioners Kessler and Lehman contend that "under the familiar instructions of the Supreme Court in Chevron, 467 U.S. at 844 [104 S.Ct. at 2782-83], PTO's Final Determination is entitled to controlling weight." The contention is unavailing, based as it is on a mistake as to Chevron's breadth. Under Chevron, where Congress has authorized an agency to promulgate substantive rules under a statute it is charged with administering, we must uphold the agency's interpretation of an ambiguity or omission in that statute if the interpretation is a reasonable one. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). As the Seventh Circuit recently had occasion to note, however, "only statutory interpretations by agencies WITH RULEMAKING POWERS deserve substantial deference." Atchison, Topeka and Santa Fe Ry. Co. v. Pena, 44 F.3d 437, 441 (7th Cir.1994) (in banc ) (emphasis added), aff'd, --- U.S. ----, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996). See also 1 KENNETH CULP DAVIS AND RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 6.3 (1994); Michael Herz, Deference Running Riot: Separating Interpretation and Lawmaking Under Chevron, 6 Admin. L.J. Am. U. 187, 200-03 (1992).
 
 
 33
 As we have previously held, the broadest of the PTO's rulemaking powers--35 U.S.C. § 6(a)--authorizes the Commissioner to promulgate regulations directed only to "the conduct of proceedings in the [PTO]"; it does NOT grant the Commissioner the authority to issue substantive rules. Animal Legal Defense Fund v. Quigg, 932 F.2d 920, 930, 18 USPQ2d 1677, 1686 (Fed.Cir.1991).[6] Because Congress has not vested the Commissioner with any general substantive rulemaking power, the "Final Determination" at issue in this case cannot possibly have the "force and effect of law." Chrysler Corp. v. Brown, 441 U.S. 281, 302, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979) ("[T]he exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes."). Thus, the rule of controlling deference set forth in Chevron does not apply. Such deference as we owe to the PTO's interpretive "Final Determination" regarding the interrelationship by the URAA and the Hatch-Waxman Act thus arises, not from the rule of Chevron, but solely from, inter alia, the thoroughness of its consideration and the validity of its reasoning, i.e., its basic power to persuade if lacking power to control. See E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244, 257, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991); General Elec. Co. v. Gilbert, 429 U.S. 125, 140-46, 97 S.Ct. 401, 410-13, 50 L.Ed.2d 343 (1976); Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).
 
 IV.
 MERITS
 
 34
 The PTO/FDA argues that, as a matter of statutory interpretation, no patent issued before June 8, 1995, is entitled to add on any restoration extension to the 20-year from filing term whether the extension was granted before that date or is obtained in the future. With respect to the five patents which were in force only because the restoration period had been added to the 17-year term, the PTO/FDA goes further and argues that reapplication of a restoration period in these instances, as directed by the district court, would violate specific provisions of the statute. Appellant GPIA takes the position that the allowance of an extension for a pre-June 8, 1995, patent depends on when the EXTENSION was granted. Thus, patents issued before June 8, 1995, but which received extensions after that date, would add on that time, but restoration extensions given before June 8, 1995, would attach only to the 17-year from issuance term. The district court rejected both of these views, ruling that all patents in force on June 8, 1995, are entitled to add a restoration extension to a term calculated as 20 years from filing, regardless of when the extension is granted.
 
 
 35
 For reasons which follow, we conclude that pre-June 8, 1995, patents are entitled to add on the restoration extension to a 20-year from filing term regardless of when such extension is granted except for those patents kept in force on June 8, 1995, only because of a restoration extension. Under this interpretation, all provisions of both URAA and Hatch-Waxman can reasonably be given effect. Thus, we affirm-in-part and reverse-in-part.
 
 
 36
 We disagree with the PTO that the statutory language of section 156(a)(2), i.e., "original expiration date," can mean only the date of expiration when the patent was granted. The legislative history indicates that the phrase "original expiration date" was inserted in association with the limitation that to receive a restoration extension "the term of the patent ha[d] never been extended" BY A PRIOR RESTORATION EXTENSION.[7] Indeed, the only amendment made to Hatch-Waxman by the URAA was to make this explicit. Section 156 now reads that a restoration extension may not be given if the patent has been "extended UNDER SUBSECTION (E)(1) OF THIS SECTION." 35 U.S.C. § 156(a)(2) (1994) (emphasis added). Clearly, a patent may receive only one restoration extension. However, we do not agree with the PTO/FDA that this section presents a linguistic barrier to an add-on to a term EXTENDED BY URAA. We conclude that "original expiration date" means no more than that the expiration date has not been extended under section 156(e)(1) and, thus, the phrase can identify more than one date.
 
 
 37
 As evidence of this meaning, it must be noted that 35 U.S.C. § 154(b)(2) provides for a term extension where issuance of a patent is delayed due to appellate review of an adverse determination of patentability. This new type of extension could be determined and granted post-issuance and would be added to the term PRIOR to the addition of a restoration extension which, under section 156(a), is added to the end of what otherwise would be the patent term. Thus, the "original expiration date" of such patent would be its expiration date with the appellate review extension added, i.e., such patent's "original expiration date" would not be the expiration date at the grant of the patent. Nothing in the amendment effecting appellate review extensions suggests otherwise. Thus, we do not find the argument persuasive that, in all instances, the "original expiration date" for a pre-URAA patent must be fixed at 17 years from issuance under section 156(a). The statute, as amended, requires a more flexible interpretation of the phrase "original expiration date." Accordingly, we see no impediment to applying the restoration extension to a 20-year from filing term by reason of this statutory language.
 
 
 38
 In some instances, there may be a problem in adding a restoration extension granted pre-URAA to the 20-year term. Under the Hatch-Waxman Act the patent term plus any restoration extension cannot exceed 14 years from the date of FDA approval. 35 U.S.C. § 156(c)(3). With respect to any restoration period GRANTED after June 8, 1995, this 14-year limitation would be part of the calculation of the permissible number of days of the restoration extension. However, the addition of a pre-URAA restoration extension to a post-URAA term might extend past the 14-year limit. Congress has clearly spoken to this point. The 14-year period is a mandatory limit on the extended term and must be given effect. Thus, some pre-June 8, 1995, extensions may need adjustment. GPIA argues for denial of pre-URAA restoration extensions precisely because FDA would have to recalculate the allowable number of days to insure that the 14-year restriction is met. We do not agree with appellants that pre-URAA patentees should be denied restoration extensions for this reason. GPIA's interpretation would treat otherwise equal patents unequally depending upon when the patentee applies for and the FDA grants an extension. Correction to fit within the 14-year limitation entails only a purely ministerial task, no more taxing than the recalculation of a new date for a patent extended by URAA alone (that is, without a restoration extension).[8]
 
 
 39
 More troubling is the problem of fitting together the different limitations on remedies during successive extensions. For pre-June 8, 1995, patents, a patentee would have full exclusionary rights for 17 years, followed by rights only to equitable renumeration (neither lost profits, an injunction, punitive damages, nor attorney fees) with respect to a certain class of infringers for the period from the end of the 17-year term to the end of the new 20-year term (the delta period), followed by entitlement to full exclusionary rights but only with respect to the approved product during the period of the restoration extension.
 
 
 40
 Upon analysis, however, this problem is more illusory than real. Infringers of drug patents who qualify for the relief afforded during the delta period are few and will diminish. The delta period limitation applies only to patents granted before June 8, 1995.[9] Further, the infringing acts, or preparation for such acts, must have begun prior to June 8, 1995, a date which will be increasingly hard to meet. In addition, unlike other manufacturers who may benefit from the delta period, a generic drug manufacturer must obtain FDA approval for marketing its product, now usually by an ANDA. Such a manufacturer is not entitled to go forward with marketing an infringing drug during the delta period without subjecting itself to suit for infringement. DuPont Merck, 62 F.3d 1397, 35 USPQ2d 1718. FDA will not approve a generic for marketing under an ANDA where the patentee files suit until the patent has expired, 30 months have passed since the patentee received notice of the ANDA, or the suit is resolved. The length of the delta period can be expected to expire before 30 months. Indeed, in view of the limited time of a delta extension--in all cases substantially less than three years--the problem will be nonexistent in most cases.
 
 
 41
 If some situations arise where full patent rights are restored for the approved product after an infringer markets a generic drug during a delta period, these can be handled on a case-by-case basis. We conclude that the majority of patents should not be denied extensions because of a mere possibility that special problems may arise in a few instances. The statute contemplates a patentee receiving time lost in its patent term by reason of FDA delay, and the statute should be liberally interpreted to achieve this end.
 
 
 42
 This leaves for consideration the five patents at issue in this proceeding which were in force on June 8, 1995, only by virtue of having previously received a restoration extension which became operative before that date. With respect to these patents, we must agree with the PTO/FDA position that application of the restoration extension violates specific provisions of the Hatch-Waxman Act and, unlike the 14-year limitation, a minor adjustment does not bring them into conformity. Section 156(a)(2) provides that a restoration extension may be given provided "the term of the patent has never been extended under subsection (e)(1) of this section." The terms of these five patents have once been extended under subsection (e)(1). Indeed, it is only because of actual use of the restoration extension that the patentees can even make their arguments under the Hatch-Waxman Act. A reapplication of the restoration extension would constitute a second extension contrary to the statute.
 
 
 43
 In addition, Congress has specifically limited any restoration extension for these patents to two years. By first applying the extension to its original 17-year term, and now applying the full extension again to the new term, this limit would be exceeded. For example, U.S. Patent No. 4,001,323 would have expired on January 4, 1994, before enactment of the URAA. It received the maximum extension of two years and had used 17 months of that extension as of June 8, 1995. Under the district court's interpretation, the patentee is entitled to the two-year extension added to a 20-year term. The restoration extension totals 41 months, which exceeds the statutory limit of 24 months. Congress would have had to amend section 156(g)(6)(c) to lift this limitation for partially used extensions, either to exceed the two-year limit or to allow the time of a restoration extension to be split. No one argues that the statute allows splitting extensions. In any event, Congress made neither change, although, as indicated, it did amend one section of the Hatch-Waxman Act as part the URAA. Thus, we presume it did not intend to lift this ban. This court would simply have to rewrite the statute.
 
 
 44
 The district court ruled for the patentees on this point because it believed Congress intended that applications filed before URAA should be treated the same as patent applications filed after. However, Congress itself treated these two classes of applications differently. No patent issued on an application filed after June 8, 1995, has a guaranteed 17year term. With the two-year limitation, Congress struck the balance it wished between restoration extensions and early availability of generics. The two-year limitation, accordingly, cannot be judicially skirted.
 
 
 45
 Finally, the problem of different remedies is not illusory for these previously extended patents. The restriction of enforcement to one product had already occurred before URAA took effect. To follow this period of limited enforcement with enforcement for all products covered by the patent (or delta enforcement in some cases) and then return to one product enforcement again can only be characterized as bizarre. No principle of statutory construction allows us to ignore specific statutory provisions or adopt an unreasonable construction.
 
 
 46
 In sum, patents that were in force on June 8, 1995, only because of a Hatch-Waxman extension are not entitled to reapply a restoration extension to a 20-year from filing term. Except for those patents, a patent in force on June 8, 1995, is entitled to have a restoration extension, whenever granted, added to the longer term of either 17 years from issuance or 20 years from filing.
 
 V.
 CONCLUSION
 
 47
 For the foregoing reasons we affirm in part, reverse in part, and remand to the district court for amendment of its order in accordance with this opinion.
 
 VI.
 COSTS
 
 48
 Each party will bear its own costs.
 
 
 49
 AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED.
 
 
 
 *
 Judge Schall did not participate in the vote for these appeals
 
 
 [1]
 Unless otherwise noted, all citations to the U.S.Code are to the 1988 edition
 
 
 [2]
 A detailed explanation of the workings of the Hatch-Waxman Act is provided by the recent opinion of this court in Bristol-Myers Squibb Co. v. Royce Laboratories, Inc., 69 F.3d 1130, 36 USPQ2d 1641 (Fed.Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996)
 
 
 [3]
 The provisions for extension in section 154 are more complicated than the above-quoted provision alone and include extensions for delay attributable to appellate review. The revised section 154 also includes a limitation on remedies under 35 U.S.C. §§ 283, 284, and 285 against infringers who made a substantial investment before the expiration of the original 17-year term. However, remedies under section 271(e)(4) remain the same. See Bristol-Myers, 69 F.3d 1130
 
 
 [4]
 The court acknowledges with appreciation the briefs amici curiae filed by Public Citizen, National Council of Senior Citizens, National Consumers League, National Association of Pharmaceutical Manufacturers, National Pharmaceutical Alliance, Gray Panthers, United States Health Cooperative, Hovione Sociedade Quimica, S.A., and the Pharmaceutical Research and Manufacturers of America
 
 
 [5]
 60 Fed.Reg. 30,069-71 (1995)
 
 
 [6]
 Accord Hoechst Aktiengesellschaft v. Quigg, 917 F.2d 522, 526, 16 USPQ2d 1549, 1552 (Fed.Cir.1990); Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392, 398-99, 13 USPQ2d 1628, 1632-33 (Fed.Cir.1990); Ethicon Inc. v. Quigg, 849 F.2d 1422, 1425, 7 USPQ2d 1152, 1154 (Fed.Cir.1988)
 
 
 [7]
 In June of 1982, Congressman Tom Railsback sent a letter to Mr. Bruce Lehman, then Counsel to the Subcommittee on Courts, Civil Liberties, and the Administration of Justice, detailing technical amendments to H.R. 6444, a 1982 predecessor of the Hatch-Waxman Act. One of the amendments added the language "from the original expiration date of the patent." Regarding this change, Congressman Railsback stated:
 The insertion of "from the original expiration date of the patent" on line 6, makes specific what was intended, namely, that the maximum extension of 7 years [enacted as 5 years], must be calculated from the original expiration date of the patent. Thus, 2 five-year regulatory review periods for 2 different products under the same patent will result in only one extension from the original patent expiration date.
 
 
 [8]
 The district court did not address the 14-year limitation problem. However, the new expiration date calculated for U.S. Patent No. 4,283,408 exceeds this limit. On remand, the term of this patent must be calculated to expire no later than 14 years after FDA marketing approval
 
 
 [9]
 All patents issued after June 8, 1995, are granted with the longer of the two possible terms. No competitor could commit any acts in reliance on an earlier expiration date. Thus, there is no delta period for such patents even though based on an application filed before June 8, 1995